IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TRACK, INC.,

                              Plaintiff,

        v.

                                                                OPINION and ORDER

ASH NORTH AMERICA, INC. and
SWENSON SPREADER, LLC d/b/a                                     21-cv-786-jdp
SWENSON PRODUCTS/AEBI SCHMIDT
NORTH AMERICA

                              Defendants.

---

Plaintiff Track, Inc. is a distributor of snow maintenance vehicles and equipment. Defendants ASH North America, Inc. and Swenson Spreader LLC manufacture AEBI-brand snow grooming products. Track alleges that it was an authorized distributor of AEBI products for several years before defendants unlawfully terminated two of its exclusive sales territories. Track asserts claims under Wisconsin and Vermont laws governing dealership agreements.

Defendants move to dismiss ASH for lack of personal jurisdiction and to dismiss Track's Wisconsin and Vermont-law claims for failure to state a claim. Dkt. 6. The court concludes that Track's allegations, though factually sparse, adequately state claims under Wisconsin's dealership law. But Track's Vermont-law claims will be dismissed. The court will deny defendants' motion to dismiss ASH without prejudice; it will allow ASH to renew that motion as provided in this opinion.


ALLEGATIONS OF FACT

The court draws the following allegations from the complaint. Dkt. 1-2. Plaintiff Track, Inc., sells snow grooming vehicles and equipment. It operates dealership locations in

Wisconsin, Vermont, and Canada. Defendants ASH North America, Inc. and Swenson Spreader, LLC manufacture grounds maintenance products including snow grooming equipment and vehicles under the AEBI brand.

In 2017, Track and defendants entered into a distribution agreement under which Track became an authorized distributor of AEBI equipment and vehicles. The agreement granted Track the exclusive sales territories of "the Midwest region of the United States and all of Canada except for British Columbia."

In March 2021, defendants terminated the Canadian portion of Track's exclusive territory without explanation or prior notice. In September 2021, defendants notified Track that it would no longer be permitted to order AEBI products from an agreed-upon price list for Midwest sales. That effectively terminated Track's Midwest exclusive sales territory as well.

This case was removed from state court under 28 U.S.C. § 1332, which allows the court to exercise jurisdiction when the amount in controversy exceeds $75,000 and all plaintiffs are citizens of different states than all defendants. According to the notice of removal, the amount in controversy exceeds the applicable threshold, Track is a citizen of Vermont, and both defendants are citizens of Delaware and Ohio. Dkt. 1. Track has produced evidence suggesting that defendants are actually citizens of Wisconsin, which may matter for personal jurisdiction. But whether defendants are citizens of Ohio or Wisconsin, the court is satisfied that it has subject-matter jurisdiction on the basis of diversity.

ANALYSIS

Track brings claims under the Wisconsin Fair Dealership Law (WFDL) and Vermont's analogous dealership law. Track asserts that defendants terminated its exclusive sales territories

of Canada and the Midwest without good cause, adequate notice, or meeting other statutory requirements for modifying dealership agreements.

Defendants move to dismiss ASH under Rule 12(b)(1), contending that the court does not have personal jurisdiction over that defendant. Defendants also move to dismiss Track's WFDL and Vermont dealership law claims under Rule 12(b)(6) on the ground that the complaint does not establish plausible claims to relief. For the reasons explained below, the court will deny defendants' motion to dismiss ASH without prejudice and give ASH an opportunity to renew its motion. The court will deny defendants' motion to dismiss Track's WFDL claims. Track's Vermont-law claims will be dismissed.

## A.  Personal jurisdiction over ASH

Defendants contend that the court cannot exercise personal jurisdiction over ASH because it does not have relevant contacts with Wisconsin. Track bears the burden of establishing personal jurisdiction. *Advanced Tactical Ordnance Systems, LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 799 (7th Cir.2014). Generally speaking, this requires Track to show that an exercise of jurisdiction is consistent with both state law and the Due Process Clause. *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010).

To determine whether there is personal jurisdiction over a defendant, the court may consider the allegations in the complaint and any evidence submitted by the parties. *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012). "If material facts about personal jurisdiction are in dispute, the court must hold an evidentiary hearing to resolve them." *Philos Techs., Inc. v. Philos & D, Inc.*, 802 F.3d 905, 912 (7th Cir. 2015) (quoting *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). "Until that hearing is held, the party asserting personal jurisdiction need

only make out a prima facie case of personal jurisdiction." *Id*. In determining whether Track has made a prima facie showing, the court must resolve factual disputes in favor of Track. *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003).

There are two types of personal jurisdiction: general and specific. *Brook v. McCormley*, 873 F.3d 549, 552 (7th Cir. 2017). The court can assert general personal jurisdiction over a defendant who has such systematic and continuous contact with the forum state that the defendant could be considered at home there. *Daimler AG v. Bauman*, 571 U.S. 117, 126–27 (2014). Under those circumstances, the defendant would be subject to personal jurisdiction in that court for any claim. *Id.*

The court may also exercise specific personal jurisdiction based on a defendant's more limited contacts with the forum state, so long as those contacts are related to the claims in the lawsuit. Specific jurisdiction must be authorized by the forum state's personal jurisdiction statute, also called the long-arm statute, and it must meet the requirements of the Due Process Clause. *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012).

Here, both general and specific jurisdiction are at issue. As for general jurisdiction, defendants say that they have no ties to Wisconsin that would qualify as systematic and continuous. Defendants rely on declarations from ASH's president and CEO stating that ASH is a mere holding company that owns no real estate or bank accounts in Wisconsin. Dkt. 8 and Dkt. 19. The declarations acknowledge that several ASH-affiliate entities have facilities in Wisconsin, but state that ASH's corporate offices are in Ohio. *Id.* However, Track adduces evidence in the form of corporate website materials and a press release suggesting that ASH goes by a different name, Aebi Schmidt Group North America, which opened new corporate offices in Wisconsin in July 2021. Dkt. 17-6 and Dkt. 17-7. Defendants do not adequately

explain this evidence. If the conflicting evidence is viewed in favor of Track, the facts would support general jurisdiction over ASH. *Kipp v. Ski Enter. Corp. of Wisconsin*, 783 F.3d 695, 698 (7th Cir. 2015) (a corporation is at home for purposes of personal jurisdiction in the state of its principal place of business).

Track's allegations are also sufficient to make a prima facie showing of specific jurisdiction. As for Wisconsin's long-arm state, Track's claims would fall within the scope of Wis. Stat. § 801.05(5), which provides jurisdiction in actions arising from contracts for goods shipped to or from Wisconsin. ("In any action which: . . . Arises out of a promise, made anywhere to the plaintiff or to some 3rd party for the plaintiff's benefit, by the defendant to deliver or receive within this state or to ship from this state goods, documents of title, or other things of value"). Here, Track alleges that it became an authorized dealer of AEBI products for the Midwest region under a contract with both defendants, and that it operated a dealership in Wisconsin. The court can infer that Track would have received AEBI products shipped to Wisconsin.

To meet the requirements of the Due Process Clause, Track must also show that: (1) ASH purposefully availed itself of the privilege of conducting business in the forum state or purposefully directed its activities at the state; and (2) Track's alleged injury arose out of ASH's forum-related activities. *Curry v. Revolution Labs., LLC,* 949 F.3d 385, 398 (7th Cir. 2020). Track alleges that ASH was a party to the distribution contract granting Track authorized dealership rights and the Midwest exclusive territory, that Track operated one of its three dealerships in Wisconsin, and that it was harmed by the termination of the Midwest territory. This is adequate to establish a prima facie case that ASH availed itself to the benefits

of doing business in Wisconsin by authorizing sales of its products from a Wisconsin-based dealership and that ASH's conduct gave rise to Track's claims.

The court will deny defendants' motion to dismiss ASH without prejudice. But material facts relating to personal jurisdiction appear to remain in dispute. The court will give defendants until April 21, 2023, to renew their jurisdictional motion. With the renewed motion, defendants should fully explain the purpose of the Chilton, Wisconsin facility, what corporate activities are conducted there, ASH's relationship to Aebi Schmidt Group North America, and ASH's involvement in authorizing Track's distribution of AEBI snow-grooming products. If defendants renew their motion, Track may have until May 5, 2023, to respond. The court will deny Track's pending motion to submit supplemental briefing on ASH's Wisconsin contacts, Dkt. 24, because Track may provide its briefing and evidence with its May 19 submission. If facts remain in dispute after the parties' submissions, the court will hold an evidentiary hearing on the issue of personal jurisdiction on May 19, 2023, at 1:00 p.m.

## B.  WFDL claims

Track asserts that defendants violated the WFDL by terminating Track's exclusive Canada and Midwest territories. Defendants move to dismiss for failure to state a claim on two grounds: (1) Track failed to allege facts that establish a dealership agreement under the WFDL; and (2) Track seeks to apply the WFDL extraterritorially to violations that occurred outside Wisconsin.

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of the complaint. *Szabo v. Bridgeport Mach., Inc.*, 249 F.3d 672, 675 (7th Cir. 2001). Generally, all that is required by federal pleading rules is "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The question is

whether the complaint contains factual allegations that state a plausible claim for relief. *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015). The court must accept Track's plausible allegations as true and draw all reasonable inferences from those facts in Track's favor. *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 826 (7th Cir. 2015).

### 1. Existence of a dealership

The WFDL governs the relationship between goods manufacturers and dealers. It was enacted to protect dealers from unfair treatment by manufacturers who often have superior bargaining power over the distributors of their goods. Wis. Stat. § 135.01. The WFDL provision relevant to this case prohibits manufacturers from terminating dealership contracts without good cause, adequate notice, and meeting other statutory requirements. Wis. Stat. § 135.03.

But the law does not apply to the ordinary vendor-vendee relationship. *Baldewein Co. v. Tri-Clover, Inc.*, 2000 WI 20, ¶ 26, 233 Wis. 2d 57, 72, 606 N.W.2d 145, 151. A store that sells one manufacturer's products among those of many others is not a dealership. Rather, the WFDL's protections are reserved for dealers who have invested substantially in, and whose economic viability depends on, selling a manufacturer's products. Wis. Stat. § 135.01. To state a claim under the WFDL, a party must demonstrate that its business relationship meets the WFDL's definition of a dealership:

> A contract or agreement, either express or implied, whether oral or written, between 2 or more persons, by which a person is granted the right to sell or distribute goods or services, or use a trade name, trademark, service mark, logotype, advertising or other commercial symbol, in which there is a community of interest in the business of offering, selling or distributing goods or services at wholesale, retail, by lease, agreement or otherwise.

Wis. Stat. § 135.02. The definition boils down to three requirements: (1) a contract or agreement; (2) that grants a person the right to sell or distribute a product or use certain branding materials; and (3) that demonstrates a community of interest in the business. *Watch Co., Inc. v. Citizen Watch Co. of Am., Inc.*, No. 21-2943, 2022 WL 1535262, at *2 (7th Cir. May 16, 2022).

Defendants contend that Track's allegations do not establish a community of interest, which the statute defines as "a continuing financial interest between the grantor [of a dealership] and grantee in either the operation of the dealership business or the marketing of such goods or services." Wis. Stat. § 135.02(1). The existence of a community of interest depends on two questions, whether: (1) the dealer derives a large share of its revenue from the dealership; and (2) the dealer made substantial and unrecoverable investments into the dealership. *Watch Co.*, 2022 WL 1535262, at *2.

The allegations in Track's complaint are thin, but the court concludes that they meet the minimum federal pleading requirements of Rule 8. Track states in its complaint that the parties' agreement "constitutes a dealership" under the WFDL's definition, that it became an authorized dealer of AEBI products in 2017, sold AEBI products through its dealerships, and was granted the exclusive sales territories of Canada and the Midwest. This is enough to demonstrate a plausible community of interest. Snow removal vehicles are large and costly items of a type often sold at dealerships with sizeable sales facilities that have made brand-specific investments.

Defendants also contend that Track's allegations fail to show a dealership in Wisconsin. The WFDL defines a dealer as "a person who is a grantee of a dealership situated in this state." Wis. Stat. § 135.02(1). Whether a dealer is situated in Wisconsin depends on the dealership's

development of, investment in, and reliance on the Wisconsin market. *Baldewein*, 233 Wis.2d at 75, 606 N.W.2d 145. Track's allegations that it operated a dealership in Wisconsin and that it had the exclusive Midwest sales territory is enough, for purposes of pleading, to support the inference of substantial involvement in the Wisconsin market.

### 2.  Extraterritorial application of the WFDL

Defendants contend that that the WFDL does not apply to business activities outside Wisconsin and that Track has not alleged any Wisconsin-based WFDL violations.

The primary authority on the territorial reach of the WFDL is *Morley-Murphy Co. v. Zenith Elecs. Corp.*, 142 F.3d 373, 378 (7th Cir. 1998), which held that a dealer may not base a WFDL claim on lost profits from the termination of out-of-state dealerships. In *Morley-Murphy*, the plaintiff was a Wisconsin-based electronics distributor with dealerships in Wisconsin and several other states, including Minnesota and Iowa. *Id*. at 374. The court reversed the plaintiff's jury award for lost future profits from the Iowa and Minnesota dealerships. *Id*. at 378. The court first reasoned that applying the WFDL to dealerships in other states would pose a risk of violating the dormant Commerce Clause, which prohibits states from enacting laws that unduly burden or discriminate against other states in interstate commerce. *Id*. at 379. The court ultimately decided the case on statutory construction grounds, relying on language in the WFDL and a general presumption against extraterritorial state regulation that Wisconsin courts have applied in other contexts. *Id.* at 378–79. The court concluded that a plaintiff cannot base a WFDL claim on the termination of dealerships outside of Wisconsin. *Id.* at 381; *see also Generac Corp. v. Caterpillar Inc.*, 172 F.3d 971, 976 (7th Cir. 1999) (lack of sales in Wisconsin forecloses damages under the WFDL).

The court understands defendants' argument to be two-fold. First, defendants contend that Track's complaint does not specifically state that the Midwest sales territory included Wisconsin. Second, defendants contend that Track may not bring WFDL claims arising from violations in other states or Canada.

Track's allegations establish plausible violations in Wisconsin. Track alleges that it operates a dealership in Monico, Wisconsin, and that it was the exclusive Midwest distributor for AEBI products, which is more than enough to support the inference that Track sold to Wisconsin buyers. *Morley-Murphy* precludes relief under the WFDL based on activities or losses at dealerships located outside Wisconsin. Whether Track can obtain damages arising from sales by the Wisconsin dealership to customers in other Midwest states is an open legal question. Michael A. Bowen, Brian E. Butler, Cassandra H. McCauley, and Joseph P. Wright, *The Wisconsin Fair Dealership Law,* 5ed 2022, 2-4–7 (It is not clear "how *Morley-Murphy* should be applied to termination of a single dealership located in and operating exclusively from Wisconsin but making sales to buyers within and outside the state"). But this is really a damages question more appropriately addressed at summary judgment.

The court will deny defendants' motion to dismiss Track's WFDL claims.

## C.  Vermont dealership law claims

Track also contends that the terminations of the Canada and Midwest territories violated Vermont's dealership law, which offers similar protections to dealers as the WFDL. Defendants move to dismiss Track's Vermont-law claims, contending that: (1) the Vermont law does not apply to extraterritorial violations; and (2) claims under the Vermont law may only be brought in Vermont courts.

The Vermont dealership statute prohibits manufacturers from terminating dealership agreements without good cause and adequate notice. Vt. Stat. 9, § 4072. Like the WFDL, the Vermont statute does not specify whether it was intended to apply to business activities or dealerships outside of Vermont. The parties do not cite any authorities on this issue, and the court is not aware of any. But the constitutional concerns about the dormant Commerce Clause discussed in *Morley-Murphy* are relevant in the context of Vermont's dealership law. 142 F.3d at 379. And the general rule in Vermont is that "a statute which uses general words is to be construed as having no extraterritorial effect, unless it clearly indicates a different intention." *R & G Properties, Inc. v. Column Fin., Inc.*, 2008 VT 113, ¶ 42, 184 Vt. 494, 513, 968 A.2d 286, 299–300 (2008); *First Nat. Bank of Bos. v. Harvey*, 111 Vt. 281, 292, 16 A.2d 184, 188 (1940) ("a statute is to be construed as not intended to have extra-territorial effect, but only an intra-territorial effect, unless it clearly indicates a different intent.").

Track identifies no clear indication of extraterritorial effect. And Track has not alleged plausible violations of the law within Vermont. It is difficult to see why changes to Track's exclusive right to sell AEBI products in Canada and the Midwest would affect the Vermont dealership. Track doesn't allege, for example, that the Vermont dealership sold to buyers in Canada or Midwest states.

Even if Track had established a violation of the Vermont dealership law, the statute's remedies provision requires claims to be brought in a Vermont court:

> A person damaged as a result of a violation of this chapter may bring an action against the violator in a Vermont court of competent jurisdiction for damages, together with the actual costs of the action, including reasonable attorney's fees, injunctive relief against unlawful termination or substantial change of competitive circumstances, and such other relief as the court deems appropriate.

Vt. Stat. 9, § 4079(a).

Track contends that the statute's use of the word "may" merely creates an option to file claims in Vermont courts, but that plaintiffs are free to file in other courts too. Track cites a different subsection of the remedies provision related to arbitration, Vt. Stat. 9, § 4079(c), that uses the word "shall." Track says that this demonstrates a distinction in the statute between a permissive directive using the word "may," and a mandatory directive using the word "shall." But if the Vermont legislature intended to allow Vermont dealership law claims to be brought in any federal or state court, there was no reason to refer specifically to Vermont courts in the provision. Track's interpretation of the statute would render the reference to Vermont courts completely superfluous. The court will grant defendants' motion to dismiss Track's Vermont-law claims.

ORDER

IT IS ORDERED that:

1. Defendants' motion to dismiss, Dkt. 6, is GRANTED in part and DENIED in part.

2. The motion is DENIED with respect to the motion to dismiss plaintiff's Wisconsin-law claims for failure to state a claim. The motion is GRANTED with respect to plaintiff's Vermont-law claims.

3. Defendants' motion to dismiss claims against ASH North America, Inc. for lack of personal jurisdiction is DENIED without prejudice. Defendants may renew that portion of the motion by April 21, 2023. Plaintiff may have until May 5, 2023, to respond. The parties' submissions should include all evidence and argument bearing on the question of personal jurisdiction. If facts remain in dispute, the court will hold an evidentiary hearing on the issue of personal jurisdiction on May 19, 2023, at 1:00 p.m.

4. Plaintiff's motion for leave to file supplemental briefing in opposition to defendants' motion to dismiss, Dkt. 24, is DENIED.

Entered March 31, 2023.

BY THE COURT:

/s/
_____

JAMES D. PETERSON
District Judge